S. LANE TUCKER
United States Attorney

NOAH ROETMAN
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
Email:  Noah.Roetman@usdoj.gov

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KALEB BASEY,<br><br>               Plaintiff,<br><br>   vs.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>              Defendant. | Case No.  3:24-cv-00005-SLG |

**UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Kaleb Basey sued the United States Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Specifically, Plaintiff seeks records from two DOJ components: the Executive Office for the U.S. Attorneys ("EOUSA") and the Federal Bureau of Investigations ("FBI"). DOJ has properly discharged its FOIA obligations. EOUSA properly identified responsive records and

referred those records to FBI. FBI in turn produced releasable documents or portions of documents and invoked proper legal authority when withholding documents or portions of documents that were otherwise responsive to Plaintiff's FOIA request. The Government has properly discharged its duties under FOIA and now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1]

## FACTUAL BACKGROUND

Defendant United States incorporates the Declaration of Michael G. Seidel in its entirety.

### A. EOUSA's PROCESSING OF THE REQUEST

Plaintiff's January 11, 2023 FOIA request was assigned the tracking number EOUSA-2023-000927. Decl. of Michael G. Seidel at ¶19, Ex. L. EOUSA located 65 records during its search and made a direct referral to FBI on or about November 1, 2023, letting Plaintiff know it was doing so. *Id.* at ¶19; Ex. A. FBI determined that each of the 65 records were duplicative of records already located in its own search and being processed for Plaintiff. *Id.* EOUSA's search revealed no responsive documents to related to "procedures, training, and similar material regarding how determinations of the reality

---

[1] Because DOJ has discharged its obligations under FOIA, the Court should also grant summary judgment in favor of DOJ on Plaintiff's claim regarding the timeliness of the agency's response. *Hajro v. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1102-03 (9th Cir. 2015) (a "specific FOIA claim is moot" once the agency produces the requested documents, however belatedly); *Papa v. United States*, 281 F.3d 1004, 1013 (9th Cir. 2002) (an agency's "production of all nonexempt materials, 'however belatedly,' moots FOIA claims").

*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

Case 3:24-cv-00005-SLG    Document 38    Filed 08/05/24    Page 2 of 31

of alleged minors and images are made." Ex. B. Nor did it reveal communications using keywords "NCMEC", "FAVIAU", "real", "reality", "virtual", "fake", "not real", "photoshop", "photoshopped", "composite", "composited", "FOIA", "FOIPA", or "Brady." Decl. of Seidel, Ex. L.

## B. FBI's PROCESSING OF THE REQUEST

**Initial Correspondence**

By email dated January 10, 2023, Plaintiff's fiancé submitted Plaintiff's unsigned FOIPA request to the Department of Justice (DOJ) Mail Referral Unit (MRU). The Plaintiff, via his fiancé, specifically requested the following information:

- Records previously withheld under FOIA exemption 7(A) in Kaleb Lee Basey v. Dept. of the Army, No. 4:16-cv-00038-TMB (D. Alaska). These records are associated with FOIA request number: 1358015 and FOIA appeal number: DOJ-AP-2016-005673.

- Records associated with FBI case No. 305I-AN-5401337 which is a case associated with Kaleb Lee Basey, that pertain to the DOJ/FBI's efforts to determine whether images seized from Basey's Yahoo email account (swingguy23@yahoo.com) depicted real minors. This may include records from the National Center for Missing and Exploited Children ("NCMEC') or records from the FBI's Forensic Audio Video and Image Analysis Unit ("FAVIAU') opining on whether the image(s) depict real minors.

- DOJ guidance, standard operating procedures ("SOPs"), training manuals, and similar material regarding how determinations of the reality of alleged minors and images in cases under 18 U.S.C. §2252 are made.

- Communications between any DOJ personnel (e.g., FBI agents, AUSAs, etc.) regarding FBI case No. 305I-AN-5401337 (the Kaleb Basey investigation) that have the following keywords: "NCMEC", "FAVIAU', "real", "reality", "virtual", "fake", "not real', "photoshop", "photoshopped", "composite", "composited",

"FOIA", "FOIPA", "Brady". "Communications" means any word-searchable memorialized record of communication including text messages, emails and correspondence. Likely authors/recipients include Jolene Goeden, Kyle Frederick Reardon, Andrea Whittier Hattan, Holly Steeves.

Plaintiff limited his request to records dated January 1, 2014 to the present, and authorized release of responsive material to his fiancé. Plaintiff provided a separate signed verification of his identity, signed under penalty of perjury. The DOJ, MRU forwarded the request to the FBI by email dated January 12, 2023 and advised Plaintiff's fiance of the same. Decl. of Seidel ¶¶6-7.

By letter dated January 24, 2023, the FBI acknowledged receipt of the referred FOIPA request and assigned it FBI FOIPA Request Number 1358015-001. The FBI advised Plaintiff's fiancé that because the request sought records for one or more third party individuals, the FBI could neither confirm nor deny the existence of such records pursuant to FOIA exemptions (b)(6) and (b)(7)(C). The FBI further advised Plaintiff's fiancé that the mere acknowledgement of the existence of FBI records on a third party individual could reasonably be expected to constitute an unwarranted invasion of personal privacy and that this was FBI's standard response to such requests and should not be taken to mean that records do, or do not, exist. The FBI informed Plaintiff's fiancé it was closing the request but she could visit www.fbi.gov, select "Services," "Information Management," and "Freedom of Information/Privacy Act" for more information about making requests for records on third party individuals (living or deceased). Finally, the FBI informed Plaintiff's fiancé she could appeal the FBI's

*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

response to the DOJ, OIP within ninety (90) days of its letter, contact the FBI's public liaison, and/or seek dispute resolution services by contacting the Office of Government Information Services (OGIS). Decl. of Seidel ¶8. Plaintiff appealed this determination via electronic submission dated February 2, 2023 and submitted a signed copy of the request with his appeal, which authorized the FBI to send any responsive records to his fiance. *Id.* ¶9. Plaintiff's signed, certified request letter was received by the FBI's Anchorage field office on January 18, 2023.[2] The signed request was then forwarded to the Initial Processing Operations Unit of RIDS. RIDS received the signed request on February 3, 2023. *Id.* ¶10, Ex. E.

By letter dated July 10, 2023, OIP informed Plaintiff it was affirming the FBI's actions in response to Plaintiff's FOIPA Request Number 1358015-001 on partially modified grounds. OIP advised it was relying on exemptions pursuant to to the access provisions of the Privacy Act of 1974, Exemption (j)(2), as well as FOIA Exemptions 6, 7(C), (E), and 7(F). OIP further advised that because any non-public records responsive to the request would be categorically exempt from disclosure, the FBI properly asserted these exemptions and was not required to conduct a search for the requested records and

---

[2] A proper FOIA request must be "made in accordance with published rules stating the time, place, fees (if any), and procedures followed. *See* 5 U.S.C. § 552(a)(3)(A) (2018). The FBI's published guidance for submitting FOIPA requests states that mailed requests should be directed to the following address:  Federal Bureau of Investigation, Attn: Initial Processing Operations Unit, Record/Information Dissemination Section, 200 Constitution Drive, Winchester, Virginia 22602. *See* https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/freedom-of-information-privacy-act/requesting-fbi-records (last accessed July 24, 2024).

*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

it was closing Plaintiff's appeal. Finally, OIP advised Plaintiff if he was dissatisfied with the action on his appeal, Plaintiff could file a lawsuit in federal district court or seek mediation services from OGIS. *Id.* ¶11, Ex. F.

After Plaintiff filed his Complaint on August 21, 2023 and litigation commenced, FBI determined that although the copy of Plaintiff's FOIPA request submitted by his fiancé was unsigned, the later copies received during the administrative appeal did contain signatures authorizing the FBI to send any information, previously prohibited from providing to the Plaintiff due to his incarceration, to his fiancé. As a result, FBI made five monthly interim releases between December 15, 2023 and April 15, 2024. *Id.* ¶¶12-13.

**FBI's releases**

On December 15, 2023, FBI made its first interim release of records to the Plaintiff, advising that 516 pages of records were reviewed, and 40 pages of records were being released in full or part, with certain information exempted pursuant to FOIA Exemptions 3, 6, 7(C), and 7(E). 5 U.S.C. § 552 (b)(3), (b)(6), (b)(7)(C), (b)(7)(E).[3] Additionally, FBI advised Plaintiff that information was referred to other government agencies (OGAs) and FBI would communicate with the Plaintiff once the OGA responses were received. Lastly, FBI advised Plaintiff that he could appeal FBI's response to DOJ,

---

[3] FBI inadvertently did not inform Plaintiff for this interim release, and subsequent releases, that it was asserting Privacy Act Exemption (j)(2), 5 U.S.C. § 552a (j)(2), to withhold information; however, the FBI is asserting Privacy Act Exemption (j)(2) as an additional basis for withholding.

*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

OIP, within ninety (90) days of the date of its letter, contact FBI's public liaison, and/or seek dispute resolution services by contacting OGIS. *Id.* ¶14, Ex. G.

On January 17, 2024, FBI made its second interim release of records to the Plaintiff, advising that 506 pages of records were reviewed, and 394 pages of records were being released in full or part, with certain information exempted pursuant to FOIA Exemptions 3, 5, 6, 7(C), and 7(E). Additionally, FBI advised Plaintiff that information was referred to OGAs and FBI would communicate with the Plaintiff once the OGA responses were received, as well as the same appeal advisements as December. *Id.* ¶15, Ex. H.

On February 15, 2024, FBI made its third interim release of records to the Plaintiff, advising that 148 pages of records were reviewed, and 79 pages of records were being released in full or part, with certain information exempted pursuant to FOIA Exemptions 3, 5, 6, 7(C), and 7(E). FBI also reviewed one (1) video file pursuant to FOIA, and the video was withheld in its entirety pursuant to Exemptions (b)(3), (b)(6) and (b)(7)(C). The FBI also informed Plaintiff that additional media was located which originated with, or contained information concerning, an OGA and that it was consulting with the OGA and awaiting its response. The Plaintiff was reminded that the FBI previously advised him that it was consulting with an OGA.  It informed Plaintiff that the prior consultation was now complete and, that as a result of the prior consultation, a portion of the previously reviewed material was being released with the appropriate

*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

exemptions noted next to the redacted information. Plaintiff was advised that information was withheld at the request of Army on Bates-numbered pages FBI (23-cv-91)-1-277, 449-452, 459-466, 846 and 847. *Id.* ¶16, Ex. I.

On March 15, 2024, the FBI made its fourth interim release.[4] The FBI reviewed one video file pursuant to the FOIA. The video was withheld in its entirety by the FBI pursuant to FOIA Exemptions (b)(3), (b)(6) and (b)(7)(C). *Id.* ¶17, Ex. J.

On April 15, 2024, the FBI made its final release.[5] For this final release, FBI processed one video file pursuant to the FOIA. FBI informed Plaintiff that the video was withheld in its entirety pursuant to FOIA Exemptions (b)(3), (b)(6) and (b)(7)(C). Plaintiff was reminded FBI previously advised it was consulting with an OGA and that the consultation was now complete. FBI informed Plaintiff that upon review of this video, the United States Army asserted FOIA Exemptions (b)(6) and (b)(7)(C) to withhold the video in its entirety. Additionally, FBI advised Plaintiff that additional electronic records responsive to his request were located in an investigative file, and that this material was exempt in its entirety pursuant to Exemptions (b)(3), (b)(6), (b)(7)(C), and (b)(7)(E). *Id.* ¶18, Ex. K.

**FBI's Search Methodology**

Plaintiff's request sought records from FBI case number 305I-AN-5401337 which

---

[4] The FBI's determination was mailed to Plaintiff's fiancé because it involved the media (video) portion of his request.

[5] The FBI's determination was mailed to Plaintiff's fiancé because it also involved the media (video) portion of his request.

*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

is an investigatory case file associated with Plaintiff's criminal investigation. Individuals who are the subjects of investigations, as well as FBI investigative case file numbers, are reasonably expected to be indexed within the automated indices of the FBI's Central Records System (CRS). Given the comprehensive nature of the information contained therein, the CRS is the FBI system of records where responsive records would reasonably be expected to be found. *Id.* ¶20. FBI searched the Central Records system through Sentinel, FBI's case management system as of July 1, 2012. *Id.* ¶¶24-26, 27-28. However, FBI searched the Internal Policy Office's (IPO) Policy Library and the FBI Intranet for policy and training documents, using the search term "innocent images." *Id.* ¶¶29-30. And the FBI also conducted a more targeted search of the Crimes Against Children and Human Trafficking Unit (CACHTU) within the Criminal Investigative Division, and the Anchorage Field Office (ANFO). *Id.* ¶31.

### The FBI'S Central Records System

The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI while fulfilling its mission and integrated functions as a law enforcement and intelligence agency, and in the fulfillment of its administrative and personnel functions. The CRS spans the entire FBI organization and encompasses the records of FBIHQ, FBI field offices, and FBI legal attaché offices worldwide. *Id.* ¶21.

The CRS consists of a numerical sequence of files, called FBI "classifications,"

*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

which are organized according to designated subjects. The broad array of CRS file classification categories includes types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters. For identification and retrieval purposes across the FBI, when a case file is opened, it is assigned a Universal Case File Number consisting of three sequential components: (a) the CRS file classification number; (b) the abbreviation of the FBI office of origin (OO) opening the file; and (c) the assigned individual case file number for the particular subject matter. Within each case file, pertinent documents of interest are "serialized," or assigned a number in the order which the document is added to the file, typically in chronological order. *Id.* ¶22.

### *The Central Records System's General Indices and Indexing*

The general indices to the CRS, comparable to a digital version of a library card catalog, function as the key to locating records within the enormous amount of information contained in the CRS. FBI personnel index information in the CRS by individual (person), organization (entity, place, or thing), or activity or event (e.g., terrorist attack, bank robbery, child exploitation) when information is deemed of sufficient significance to warrant indexing for future retrieval. The entries in the general indices fall into two categories:

Main index entry: A main index entry is created for each individual or non-individual (e.g., organization, event, or activity) that is the subject or focus of an

Case 3:24-cv-00005-SLG    Document 38    Filed 08/05/24    Page 10 of 31

investigation. Main subjects are identified in the case title of a file. In this case, FBI investigation subject Kaleb Lee Basey is the main subject of requested investigation case file 305I-AN-5401337.

Reference index entry: A reference index entry is created for an individual or non-individual (e.g., organization, event, or activity) associated with an investigation, but who or which is not the main subject or focus of the investigation. Reference subjects are typically not identified in the case title of a file. *Id.* ¶23.

***The Resulting Search***

The FBI searched each location above for responsive documents. *Id.* ¶¶20-32.

## LEGAL BACKGROUND

### I. FOIA BACKGROUND

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Accordingly, FOIA generally requires the disclosure of agency records upon the request of any person. 5 U.S.C. § 552 (a)(3)(A).

The right to access agency records is not unlimited: FOIA incldues nine statutory exemptions to the general disclosure obligation. 5 U.S.C. § 552(b)(1)-(9). These exemptions reflect Congres's decision "to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence."

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. No. 89-1497, at 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423); *accord Pickard v. Dep't of Justice*, 653 F.3d 782, 790 (9th Cir. 2011) (Wallace, J., concurring) ("'Congress established FOIA' to strike a balance between the public's interest in knowing 'what [ts] government is up to' and the 'legitimate governmental or private interests' in withholding documents subject to FOIA's exemptions." (quoting *Boyd v. Criminal Div. of the U.S. Dep't of Justice*, 475 F.3d 381, 385 (D.C. Cir. 2007))). Although the nine FOIA exemptions should be "narrowly contrued," *FBI v. Abramson*, 456 U.S. 615, 630 (1982), the Supreme Court has made clear that they must be given "meaningful reach and application." *John Doe Agency*, 493 U.S. at 152.

## II. SUMMARY JUDGMENT IN FOIA LAWSUITS

A court reviews an agency's response to a FOIA request de novo. 5 U.S.C. § 552(a)(4)(B). Under 5 U.S.C. § 552(a)(4)(B) federal jurisdiction is dependent upon a showing that an agency has "(1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). Agency records are records that are (1) either created or obtained by an agency, and (2) under agency control at the time of the FOIA request. *DOJ v. Tax Analysts*, 492 U.S. 136, 144-45 (1989). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

Because facts in FOIA cases are rarely in dispute, "[m]ost FOIA cases are resolved by the district court on summary judgment." *Animal Legal Defense Fund v. FDA*, 836 F.3d 987, 989 (9th Cir. 2016); *accord Lawyers' Comm. for Civil Rights v. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) ("As a general rule, all FOIA determinations should be resolved on summary judgment."). Discovery is seldom necessary or appropriate. *See Lane v. Dep't of the Interior*, 523 F.3d 1128, 1134-35 (9th Cir. 2008).

An agency bears the burden of establishing the adequacy of its search for records responsive to a FOIA request. *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (quoting *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). Similarly, the agency bears the burden of justifying the assertion of FOIA exemptions to redact or withhold documents. 5 U.S.C. § 552(a)(4)(B). To meet these burdens, an agency may rely upon reasonably detailed, non-conclusory affidavits. *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996); *Zemansky*, 767 F.2d at 571. An affidavit that "identif[ies] the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption" is "commonly reffered to as a '*Vaughn* index.'" *Lion Raisins Inc. v. Dept' of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004) (citing *Vaughn v. Rosen*, 484 F.2d 820, 823-25 (D.C. Cir. 1973)), *overruled on other grounds by Animal Legal Defense Fund*, 836 F.3d 987 (9th Cir. 2016).

Affidavits submitted by an agency are entitled to a "presumption of good faith."

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Moreover, courts "accord substantial weight to an agency's declarations regarding the application of a FOIA exemption." *Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012) (citing *Hunt v. CIA*, 981 F.2d 1116, 1119-20 (9th Cir. 1992)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (citation omitted).

## A. Adequacy of a Search

Federal agencies must conduct searches that are reasonably calculated to locate all agency records responsive to a FOIA request. 5 U.S.C. § 552(a)(3)(C)-(D); *Zemansky*, 767 F.2d at 571 (quoting *Weisberg*, 745 F.2d at 1485). "[T]here is no requirement that an agency search every record system . . . or that a search has to be perfect." *Lawyers' Comm. for Civil Rights*, 534 F. Supp. 2d at 1130 (citing cases). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995) (quotation omitted; emphasis in original). Accordingly, "the agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004).

As noted above, to justify its search for purposes of summary judgment, an agency

*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

may provide an affidavit explaining its search in reasonable detail. *Zemansky*, 767 F.2d at 571; *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982) ("[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scop and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA."). Once an agency has submitted a non-conclusory, detailed declaration establishing that its search for responsive records was adequate, the burden shifts to plaintiff to produce evidence undermining the presumption of good faith that a court must give to that declaration. *See Lahr*, 569 F.3d at 987-88; *Laughlin v. Comm'r*, 103 F. Supp. 2d 1219, 1222 (S.D. Cal. 1999).

### B. Withholding of Records under FOIA

In response to a FOIA request for records, an agency must withhold records where their disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A).

**Exemption 3**

Exemption 3 of FOIA excludes information "specifically exempted from disclosure by statute . . . if that statute (A)(i) requires that matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld" from FOIA's disclosure requirements. 5 U.S.C. § 552(b)(3). Courts utilize a two-step method in Exemption 3 questions: "ask[ing] first whether the statute identified by the

*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

agency is a statute of exemption within the meaning of Exemption 3, and then whether the withheld records satisfy the criterea of the exemption statute." *Hamdan v. DOJ*, 797 F.3d 759, 776 (9th Cir. 2015) (citing *CIA v. Sims*, 471 U.S. 159, 167 (1985)). Relevant to this case, the Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509(d), protects from public disclosure certain records containing identifying information pertaining to children involved in criminal proceedings.[6]

**Exemption 5**

"Under Exemption 5, the Government need not disclose 'inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency . . . .'" *Transgender L. Ctr. v. ICE*, 46 F.4th 771, 783 (9th Cir. 2022) (citing 5 U.S.C. § 552(b)(5)). "This allows agencies to withhold privileged information, including documents revealing an agency's deliberative procerss and confidential attorney-client communications." *Id.* (citing *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). In asserting this privilege, the agency "must show that a document is both '(1) predicisonal or antecedent to the adoption of agency policy and (2) deliberative, meaning it must actually be related to the process by which policies are formulated.'" *Id.* (citations omitted). "A document is

---

[6] A child is "a person who is under the age of 18" alleged to be "a victim of a crime of physical abuse, sexual abuse, or exploitation," or "a witness to a crime committed against another person." Plaintiff was convicted for distribution and transportation in violation of 18 U.S.C. § 2252(a)(1) and (a)(2). *U.S. v. Basey*, No. 4:14-cr-00028-RRB (D. Alaska Dec. 12, 2017) ECF 214.

*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

'predecisional' if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision.'" *Id.* (citations omitted). "A document is 'deliberative' if 'disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Id.* (citations omitted).

**Exemption 6**

Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "The phrase "'similar files' has a 'broad, rather than a narrow meaning.'" *Id.* (citations omitted). Courts follow "'a two-step test for balancing individual privacy rights against the public's right of access' under Exemption 6, which begins as a threshold evaluation of whether the personal privacy interest at stake 'is nontrivial.'" *Id.* at 783-84 (citations omitted). "'[G]overnment records containing information that applies to particular individuals satisfy the threshold test of Exemption 6.'" *Id.* at 784 (citations omitted). Public interest in disclosure is limited to the FOIA's core purpose of shedding light on an agency's performance of its statutory duties. *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). "That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Id.*

*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

**Exemption 7(C) & (E)**

Exemption 7(C) exempts from disclosure law enforcement records or information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). This exemption requires "balancing" the personal privacy that could reasonably be expected to be invaded by the production of the records against the public purpose served by the release. *Reporters Comm. for Freedom of the Press*, 489 U.S. at 776. "[W]here there is a privacy interest protected by Exemption 7(C) . . . the requester must provide eviudence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 174 (2004). This exemption protects the identities of suspects and other persons of investigatory interest, as well as witnesses. *See Reporters Comm. for Freedom of the Press*, 489 U.S. at 780. And FBI agents "have a legitimate interest in keeping private matters that could conceivably subject them to annoyance or harassment." *Hunt v. FBI*, 972 F.2d 286, 288 (9th Cir. 1992) (citations omitted).

Exemption 7(E) exempts "records compiled for law enforcement purposes from disclosure if those records 'would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." *Hamdan*, 797 F.3d at 777 (citing 5 U.S.C. §

552(b)(7)(E). "Exemption 7(E) only exempts investigative techniques not generally known to the public." *Id.* (citations omitted). But "prior agency disclosures do not necessarily result in an agency's waiver to subsequent claims of exemption." *Bowen v. FDA*, 925 F.2d 1225, 1229 (9th Cir. 1991) (holding that additional details of law enforcement techniques were exempt from disclosure under 7(E) even where some information about those techniques had been previously disclosed through, among other things, testimony in a criminal trial.).

## ARGUMENT

Based upon the above facts and law, DOJ has discharged its indivudal obligations under FOIA by (1) conducting reasonable searches for responsive materials and (2) invoking proper legal authority when withholding documents or portions of documents that were otherwise responsive to Plaintiff's FOIA request.

While Plaintiff alleges background facts in his Complaint that relate to the Government's burden of proof in criminal trials, the only question in a FOIA matter is whether an agency improperly withheld agency records. *Kissinger*, 445 U.S. at 150.

### A. EOUSA Conducted a Reasonable Search

Defendant's Complaint against EOUSA is based on "improperly withholding agency records in request #: EOUSA-2023-000927." Dkt. 13 ¶43. But the attached documents cited above shows that EOUSA properly conducted a search for responsive documents, found out the records originated with the FBI, and made a direct referral to

*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

the FBI. Decl. of Seidel ¶19, Ex. L; Ex. A-B. This direct referral resulted in the disclosure of records to Defendant. Decl. of Seidel ¶4. Accordingly, Defendant, through its component EOUSA, discharged its duties under FOIA.

## B. FBI Conducted a Reasonable Search

Defendant alleges the FBI is "improperly withholding agency records . . . in request #: 1358015-001." Dkt. 13 ¶47. And "improperly invoking FOIA exemptions 6 and 7(C)." *Id.* ¶48. Though these allegations largely go to the decision to withhold specific records, in an abundance of caution FBI also has clearly shown the search process was reasonable. As discussed above, the FBI conducted targeted searches in CACHTU within the Criminal Investigative Division, and the Anchorage Field Office For responsive policies, guidance, SOPs, training manuals, as well as its IPO Policy Library, the FBI intranet, and finally (and where most documents were located), the Central Records System via Sentinel. Decl. of Seidel ¶¶20-32.

FBI processed a total of 1,170 pages of responsive paper records and three media productions, producing 490 pages in full, 267 pages in part, and withholding 413 pages in full and three media productions in full. *Id.* ¶4. Each document description is listed by Bates number in FBI's *Vaughn* Index, attached to Decl. of Seidel as Exhibit M. Given that FBI identified the location of potentially responsive documents, and that FBI used specific searches for responsive documents, FBI's search was "reasonably calculated to uncover all relevant documents." *See Zemansky*, 767 F.2d at 571. Defendant DOJ,

*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

through its component FBI appropriately discharged its search obligations under FOIA.

**C. FBI Did Not Improperly Withhold Any Documents**

FBI invoked various justifications for non-disclosure: the Privacy Act Exemption (j)(2), and FOIA Exemptions 3, 5, 6, 7(C), and 7(E). Plaintiff's Complaint appears to only challenge the invocation of Exemption 6 and 7(C). Dkt. 13 at 48. Nevertheless, FBI asserts it rightfully invoked all of the above exemptions.

As referenced above, FBI's *Vaughn* index clearly lays out the exemptions invoked for each group of withheld documents. Decl. of Seidel ¶¶35-38, Ex. M.

First, Exemption 3 specifically exempts information protected by statute from disclosure. 5 U.S.C. § 552 (b)(3). This includes information protected by the Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509. The investigative material withheld provides in depth and graphic details of the abuse and exploitation of minors, including interviews of a minor victim and explicit media involving CSAM,[7] and is exempt from release. Accordingly, the FBI asserted Exemption 3 in conjunction with 18 U.S.C. § 3509 to protect the names, images, and identifying information of minor children who were victims and witnesses present within the investigative records at issue. Decl. of Seidel ¶ 40.

Next, FBI properly invoked Exemption 5, which protects "inter-agency" or "intra-agency" memorandums or letters that would not be available by law to a party other than

_____

[7] Child Sexual Abuse Material.
*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Here, FBI withheld

handwritten notes of FBI Special Agents. *Id.* ¶43. This type of information clearly falls

within Exemption 5:

> Exempting such documents from disclosure also protects against public confusion
> that might result from preliminary disclosure of opinions and information that do not, in
> fact, reflect the final views of the FBI. The exemption and privilege together protect not
> only documents but also the integrity of the deliberative process itself where exposure of
> the process would result in harm. The FBI invokes Exemption 5 and the deliberative
> process privilege because FBI employees would hesitate to offer their candid and
> conscientious opinions to superiors or coworkers if they knew that their preliminary,
> unvarnished opinions might be made a matter of public record at some future date, and
> because such self-censorship would, in turn, degrade the quality of agency decisions by
> depriving the decision-makers of fully explored options developed from robust debate.
> *Id.* at 44.

The FBI relied on Exemption 5 and the deliberative process privilege to protect

draft documents consisting of FBI SAs' handwritten interview notes and handwritten

investigatory and analytical notes taken before rendering the SAs' final determinations.

In this case, the FBI withheld FBI Special Agents (FBI SAs) handwritten notes taken

during interviews of victims (Bates pages 789, 796),[8] handwritten notes taken during an

---

[8] The final FD-302s documenting the FBI SAs' determinations are located at Bates pages

evidence preparation session with an AUSA (Bates page 847),[9] and preliminary handwritten notes of an FBI SA compiled during review of evidence and created prior to finalizing the report of that review (Bates pages 823-827, 891-898).[10] *Id.* ¶45.

These materials reflect FBI SAs' deliberations which were integral to reaching final agency decisions and the preparation of final products to be serialized to the case. The draft documents, including the handwritten interview and analytical notes, located within the responsive records are deliberative and pre-decisional. Additionally, in compliance with the FOIA Improvement Act of 2016, all of this material was created less than 25 years before the submission of Plaintiff's request. *Id.* ¶46.

The FBI also asserted Exemption 5, deliberative process privilege, to withhold draft documents. Draft documents, such as internal investigative interview notes and notes taken during review of evidence or prepared to document actions taken in preparation for an evidence hearing, are inherently part of the deliberative process. They contain the SA's shorthand notes containing thoughts, ideas, impressions and interpretations of the verbal interview of a third-party individuals or in analysis of information to compile an evidence report or to document hearing preparation discussions. These thoughts, ideas, and impressions recorded in handwritten form are then fleshed out during the editorial process for the creation of the official FD-302 or

786-787 and 793-794.
[9] The final FD-302 documenting the FBI SA's reporting is located at Bates page 846.
[10] The final report documenting the SA's review is located at Bates pages 819-822 and 885-890.
*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

Case 3:24-cv-00005-SLG    Document 38    Filed 08/05/24    Page 23 of 31

report. The final FD-302 or report compiled after review of information and evidence may not reflect all of the information obtained at the time of the interview or review of evidence because additional information obtained from other sources or analysis may be incorporated into the official FD-302. Further, there could also be additional information within the handwritten notes that does not make the final cut for the official FD-302 because the author deemed the extra information to be irrelevant or uncorroborated by other facts and information reviewed by the SA at a different time. *Id.* ¶47.

In this case, SAs were interviewing underage individuals having knowledge of sensitive details of the alleged abuse and exploitation by Plaintiff. Only a portion of the interview notes were placed in the final product. This type of information may be imperative to document but may not necessarily be placed in the official record, as the agent could include information pertinent to the investigation but not to the interview. Agents rely heavily on individual assistance through interviews and must have the freedom to take notes freely and quickly without the fear that their preliminary impressions, determinations, and off-the-cuff, unfiltered observations will be released to the general public since such premature disclosure may create an opportunity to distort and/or misconstrue the words the special agent has penned. Additionally, the handwritten notes, because they are not finalized, are considered a draft document, and until finalized in the official record FD-302, can change as the document is being edited. These notes may include observations, facts, or notes that may be later determined irrelevant and

eliminated from the final interview writeup. The handwritten interview notes, and preliminary notes taken during review of evidence, predate the final agency decisions and reflect the give and take of deliberations, through the editing process, which leads to final, refined products. During the editing process, an SA may take the unvarnished notes and comb through them for relevancy, time frame, and accuracy, and in doing so they often make decisions regarding the validity of the information. In the instances where the FBI withheld draft material pursuant to Exemption 5, the FBI found the draft material was shared inter-agency, was pre-decisional (predated the final product), was deliberative (the material was shared to solicit feedback or subject to the authors own additional edits), and release could potentially harm agency deliberations. The reasonably foreseeable harm would be a chilling effect on agency employees' willingness to create or share such drafts if they knew their unrefined ideas would be subject to public disclosure. Furthermore, there would be a risk of public confusion in that these drafts do not reflect final agency decisions. Lastly, if interview notes were subject to disclosure, SAs might, in the future, hesitate to document their unfiltered thoughts within those notes, which could damage investigations by reducing the amount of observations and facts that end up in the written record. *Id.* ¶48.

FBI properly applied the deliberative process privilege under Exemption 5 to withhold pre-decisional and deliberative material consisting of handwritten notes representing the draft form of products later distilled into final form (reports or FD-302s)

Case 3:24-cv-00005-SLG     Document 38     Filed 08/05/24     Page 25 of 31

and has provided detailed, non-conclusory reasons for doing so. *See Transgender L. Ctr. v. ICE*, 46 F.4th 771, 783 (9th Cir. 2022). The FBI segregated non-deliberative facts, whenever possible, and only withheld such material when it found it was inextricably intertwined with agency deliberations.

FBI also properly applied Exemption 6 and the various Exemptions in 7, and there is much cross-over between the reasons for Exemption 6 and 7(C). All of the information sought that was excluded from disclosure under Exemption 7 was in connection with Plaintiff's criminal case, and prepared for law enforcement purposes: FBI was investigating Plaintiff for the potential violations of 18 U.S.C. §2252(a)(1) and (a)(2). On May 18, 2018, Kaleb Lee Basey was sentenced to 180 months (15 years) in prison, followed by a life term of supervised release, for distribution and transportation of child pornography in violation of 18 U.S.C. §2252(a)(1) and (a)(2). Considering these records were compiled to document the FBI's investigation of federal crimes, the FBI determined they were compiled for a law enforcement purpose. Decl. of Seidel ¶51.

Additionally, the policy records at issue were compiled and/or created in furtherance of the FBI's law enforcement mission. To accomplish this mission, the FBI must develop policy to ensure efficient, effective, and lawful use of specific law enforcement and intelligence gathering techniques, procedures, and/or investigative methods. Specifically, the records at issue are policies governing techniques, procedures, and guidelines for investigations involving crimes against children and human

*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

trafficking. Considering these policy records were also developed to further the FBI's law enforcement mission, the FBI determined they were compiled for a law enforcement purpose. *Id.* ¶52. Thus, the FBI met the threshold issue for invoking the Exemption.

Both Exemption 6 and 7(C) were invoked for similar documents. the FBI protected the names and identifying information of FBI Special Agents (SAs) and professional staff; third parties who provided information; third parties merely mentioned; persons of investigative interest; non-FBI federal governmental personnel; local law enforcement personnel; third-party victims; and commercial institution personnel. *Id.* ¶¶57-67. Defendant incorporates the Declaration of Seidel in full and the FBIs reasoning for each in its entirety. FBI's reasoning is fully supported by the applicable caselaw. For each class of persons listed above, the purpose of FOIA "is not fostered by disclosure of information about private citizens that is accumulated in various governmental fes but that reveals little or nothing about an agency's own conduct." *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773.

FBI similarly properly invoked Exemption 7(E) to withhold a number of documents including: FBI file classification numbers; Secure Fax Numbers, internal e-mail Addresses and telephone numbers; the method of collecting and analyzing information; database identifiers and printouts; computer analysis response team data; monetary payment for investigative techniques; and non-public operational directives and guidance. Decl. of Seidel ¶¶68-84. In invoking the Exemption for each of the above, the

*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

FBI protects critical non-public information where "disclosure could reasonably be expected to risk circumvention of the law." *Hamdan*, 797 F.3d at 777 (citing 5 U.S.C. § 552(b)(7)(E). Even if such information was discussed at trial (particularly investigative techniques), "prior agency disclosures do not necessarily result in an agency's waiver to subsequent claims of exemption." *Bowen*, 925 F.2d at 1229 (9th Cir. 1991). In sum, the FBI's declaration clearly shows the records withheld under 7(E) were compiled for a law enforcement purpose, would disclose non-public investigative techniques, and that their disclosure would risk circumvention of the law. Decl. of Seidel ¶¶68-84.

Further, The FBI consulted with DOD, Department of the Army, Criminal Investigation Division concerning Bates pages 1-277, 449-452, 459-466, 846-847, and a video assigned Bates page 1173. The United States Army requested that information be withheld in part or in full pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E). Decl. of Seidel ¶86, Ex. N.

Finally, the FBI conducted a segregability analysis: the FBI identified a total of 1170 responsive paper records. Of these 1170 pages of paper records the FBI, 490 pages were released in full (RIF), 267 pages released in part (RIP), and 413 pages withheld in full (WIF). In addition, three (3) media productions identified as Bates pages 1171-1173 were WIF, and Bates 1174 represents CSAM that was categorically withheld. Each of these categories is discussed below to further address segregability.

     a. Pages RIF. Following its segregability review, RIDS determined 490 pages

could be released in full without redaction as there was no foreseeable harm to an interest protected by a FOIA exemption.

b. Pages RIP. Following its segregability review, RIDS determined 267 pages could be released in part with redactions per the identified FOIA exemptions herein. These pages comprise a mixture of material that could be segregated for release and material that was withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages.

c. Pages WIF. Following its segregability review, RIDS determined 413 pages required withholding in their entirety. Of these 413 pages, RIDS determined that for 306 pages all the information on these pages was either fully covered by one or more of the cited FOIA exemptions or determined that any non-exempt information on these pages was so intertwined with exempt material, no information could be reasonably segregated for release. Any further segregation of this intertwined material would employ finite resources only to produce disjointed words, phrases, or sentences, that taken separately or together, would have minimal or no informational content. Of the remaining 110 WIF pages, the FBI withheld them because they were duplicates of other pages accounted for elsewhere in the FBI's production. It is the FBI's standard practice not to process duplicate pages,

as doing so expends finite processing resources with a net result of no

additional information being released to requesters.

*Id.* ¶87.

## CONCLUSION

Defendant DOJ (through its components EOUSA and FBI) has discharged its

obligations under FOIA by responding to Plaintiff's FOIA requests and producing all

responsive documents to which Plaintiff is entitled. Accordingly, there is no material

issue of fact before the Court and Defendant is entitled to summary judgment.

RESPECTFULLY SUBMITTED this August 5, 2024, in Anchorage, Alaska.

S. LANE TUCKER
United States Attorney


/s/ Noah Roetman
Assistant U.S. Attorney
United States of America

*Basey v. DOJ*
Case No. 3:24-cv-00005-SLG

**CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2024,
a true and correct copy of the foregoing
was served via certified mail on the following:

Kaleb Basey
17753-006 Cardinal Unit
Federal Medical Center Lexington
P.O. Box 14500
Lexington, KY 40512-4500
*Pro Se*


/s/ Noah Roetman
Office of the U.S. Attorney