# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

KALEB BASEY,

                Plaintiff,

      v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

                Defendants.

Case No. 3:24-cv-00005-SLG

## ORDER ON PENDING MOTIONS

Before the Court at Docket 38 is Defendants U.S. Department of Justice, Executive Office for U.S. Attorneys, and Federal Bureau of Investigation's Motion for Summary Judgment. Plaintiff Kaleb Basey, who is self-represented, responded in opposition and cross-moved for summary judgment at Docket 42. Defendants replied in support of their motion and in opposition to the cross-motion at Docket 45, and Mr. Basey replied in support of his cross-motion at Docket 46.

Also before the Court at Docket 41 is Mr. Basey's Motion to Constructively Amend the Pleadings, or for Leave to Amend the Pleadings to Conform to Evidence. Defendants responded with a non-opposition at Docket 44.

Oral argument was not requested and was not necessary to the Court's determination.

## BACKGROUND

This is an action pursuant to the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552, in which Mr. Basey seeks certain documents from the U.S. Department of Justice ("DOJ)".[1] In July 2018, Mr. Basey was convicted of two child pornography offenses in violation of 18 U.S.C. § 2252(a) following a jury trial.[2] In this FOIA case, he seeks records associated with his criminal trial, as he maintains the images used to convict him may not have depicted real children.[3]

On January 10, 2023, by email, Mr. Basey's fiancé submitted an unsigned FOIA request to DOJ for the following:

> Records previously withheld under FOIA exemption 7(A) in *Kaleb Lee Basey v. Dept. of the Army*, No. 4:16-cv-00038-TMB (D. Alaska) . . .
>
> Records associated with FBI case No. 305I-AN-5401337 which is a case associated with Kaleb Lee Basey, that pertain to the DOJ/FBI's efforts to determine whether images seized from Basey's Yahoo email account (swingguy23@yahoo.com) depicted real minors. This may include records from the National Center for Missing and Exploited Children ("NCMEC") or records from the FBI's Forensic Audio Video and Image Analysis Unit ("FAVIAU") opining on whether the image(s) depict real minors.
>
> DOJ guidance, standard operating procedures ("SOPs"), training manuals, and similar material regarding how determinations of the reality of alleged minors and images in cases under 18 U.S.C. § 2252 are made.
>
> Communications between any DOJ personnel (e.g., FBI agents, AUSAs, etc.) regarding FBI case No. 305I-AN-5401337 (the Kaleb Basey investigation) that have the following keywords: "NCMEC", "FAVIAU', "real", "reality", "virtual", "fake", "not real', "photoshop", "photoshopped", "composite", "composited", "FOIA", "FOIPA",

---

[1] *See* Docket 1 (SEALED); Docket 11 (redacted complaint).

[2] *United States v. Basey*, Case No. 4:14-cr-00028-RRB, Docket 257 (D. Alaska 2018).

[3] *See generally* Docket 11.

"Brady".[4]

DOJ's Mail Referral Unit acknowledged receipt of the request and, two days after the receipt of the email, sent a letter to Mr. Basey's fiancé with a tracking number and notice that DOJ had referred the request to the DOJ components that DOJ determined were most likely to have the requested records, the Executive Office for U.S. Attorneys ("EOUSA") and the Federal Bureau of Investigation ("FBI").[5]

## I.    FBI's Processing of Mr. Basey's FOIA Requests

On January 24, 2023, the FBI acknowledged receipt of the FOIA request by letter addressed to Mr. Basey's fiancé.[6]  The letter explained that, because she had requested "records on one or more third party individuals,"

> the FBI will neither confirm nor deny the existence of such records pursuant to FOIA exemptions (b)(6) and (b)(7)(C), 5 U.S.C. §§ 552 (b)(6) and (b)(7)(C).  The mere acknowledgement of the existence of FBI records on third party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy. This is our standard response to such requests and should not be taken to mean that records do, or do not, exist. As a result, your request has been closed.[7]

On February 2, 2023, Mr. Basey administratively appealed this determination.[8]  On

---

[4] Docket 39 at ¶ 6; Docket 39-2.

[5] Docket 39-2; Docket 39-3 (letter).

[6] Docket 39-4.

[7] Docket 39-4 at 2.

[8] Docket 39-5.

Case No. 3:24-cv-00005-SLG, *Basey v. U.S. Department of Justice, et al.*
Order on Pending Motions
Page 3 of 43

July 10, 2023, DOJ affirmed the FBI's decision, but on modified grounds.[9] In this letter to Mr. Basey, DOJ explained that:

> As to the portion of your request pertaining to your criminal case, to the extent that non-public responsive records exist, disclosure of such records, including law enforcement records, concerning a third-party individual would constitute a clearly unwarranted invasion of personal privacy, and could reasonably be expected to constitute an unwarranted invasion of personal privacy. Additionally, to the extent that any non-public records exist, any such records would be protected from disclosure under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(F). This provision concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to endanger the life or physical safety of an individual.[10]

As to Mr. Basey's request for DOJ documents concerning how determinations of the reality of images are made, the letter explained that "such records would be protected from disclosure under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(E)," which "concerns records or information compiled for law enforcement purposes the release of which would disclose techniques and procedures or guidelines for law enforcement investigations or prosecutions."[11]

Meanwhile, on March 21, 2023, Mr. Basey initiated this action in the U.S. District Court for the Eastern District of Kentucky.[12] On January 4, 2024, the case was transferred to the U.S. District Court for the District of Alaska.[13]

---

[9] Docket 39-7.

[10] Docket 39-7 at 2–3 (citation omitted).

[11] Docket 39-7 at 3.

[12] Docket 1 (SEALED).

[13] Docket 28.

As the case proceeded, the FBI determined that it could produce some of the documents Mr. Basey had requested and made a total of five monthly releases between December 15, 2023 and April 15, 2024.[14]  In its December 15, 2023 letter notifying Mr. Basey of the upcoming releases, the FBI noted that some "[d]ocuments were located which originated with, or contained information concerning, another Government Agency [OGA]" and that the FBI would correspond with Mr. Basey regarding those documents after consulting with the other agency.[15]  Although the FBI released some documents responsive to Mr. Basey's requests, it withheld others based on FOIA exemptions or at the request of another government agency, the U.S. Army.[16]  The FBI also reviewed three video files, each of which was withheld in its entirety.[17]  In all, the FBI identified 1,170 pages of records; it released 490 pages in full, released 267 pages in part, and withheld 413 pages in full.[18]

## II.    The EOUSA's Processing of Mr. Basey's Requests.

In a letter dated January 18, 2023 to Mr. Basey, the EOUSA acknowledged

---

[14] Docket 39 at ¶¶13–18; Docket 39-8 (December 15, 2023 letter); Docket 39-9 (January 17, 2024 letter); Docket 39-10 (February 15, 2024 letter); Docket 39-11 (March 15, 2024 letter); Docket 39-12 (April 15, 2024 letter).

[15] Docket 39-8 at 3.

[16] Docket 39 at ¶¶13–18; Docket 39-8 (December 15, 2023 letter); Docket 39-9 (January 17, 2024 letter); Docket 39-10 (February 15, 2024 letter); Docket 39-11 (March 15, 2024 letter); Docket 39-12 (April 15, 2024 letter).

[17] Docket 39 at ¶¶ 16–18.

[18] Docket 39 at ¶ 86.

receipt of Mr. Basey's request and notified Mr. Basey that it was extending the time limit to for it respond because of the complexity of his request, citing 5 U.S.C. §552(a)(6)(B)(i)–(iii).[19]  Specifically, the letter noted that "[t]he records you seek require a search in one or more field offices and potentially involves voluminous records and/or requires consultation with another agency/component with a substantial interest in the subject-matter."[20]  The EOUSA subsequently located 65 pages of records that had originated from the FBI; it referred those documents to the FBI by letter dated November 1, 2023.[21]  The FBI reviewed those 65 pages and "determined that the documents were duplicative of records already located in its own search."[22]

In letters to Mr. Basey dated December 1, 2023, and July 29, 2024, the EOUSA advised him that it had processed his FOIA request and that it had "located records that originated with another component"—the FBI—and that agency would review the records and respond to Mr. Basey directly.[23]  Both letters to Mr. Basey stated that "the United States Attorney's Office(s) for the District of Alaska, has revealed no responsive records related to 'procedures, training, and similar

---

[19] Docket 1 at 18.

[20] Docket 1 at 18.

[21] Docket 38-1.

[22] Docket 39 at ¶ 19.

[23] Docket 38-2 at 1 (December letter); Docket 39-13 at 2 (July letter).

material regarding how determinations of the reality of alleged minors and images are made.'"[24]   The July 2024 letter added that the U.S. Attorney's Office for the District of Alaska also found there were no "responsive communications records using the keywords: 'NCMEC', 'FAVIAU', 'real', 'reality', 'virtual', 'fake', 'not real', 'photoshop', 'photoshopped', 'composite', 'composited', 'FOIA', 'FOIPA', [or] 'Brady.'"[25]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FOIA requires the government to disclose information to the public upon request, subject to nine exemptions.[26]  "Most FOIA cases are resolved by the district court on summary judgment, with the district court entering judgment as a matter of law."[27]

"Before it can obtain summary judgment in a FOIA case, an agency must show beyond a material doubt, and viewing the facts in the light most favorable to the requester, that it 'has conducted a search reasonably calculated to uncover all relevant documents.'"[28]   A court reviews *de novo* an agency's response to a

---

[24] Docket 38-2 at 1; Docket 39-13 at 2–3.

[25] Docket 39-13 at 2–3.

[26] *See* 5 U.S.C. § 552(a)–(b).

[27] *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016).

[28] *Lawyers' Comm. for Civil Rights of S.F. Bay Area v. U.S. Dep't of the Treasury*, 534 F. Supp. 2d

plaintiff's FOIA request.[29]  "In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith."[30]  "[U]nder FOIA, agencies bear the burden of demonstrating the adequacy of their search beyond a material doubt."[31]

Additionally, at summary judgment, "an agency that invokes one of the statutory exemptions to justify the withholding of any requested documents or portions of documents bears the burden of demonstrating that the exemption properly applies to the documents."[32]  To prevail on summary judgment as to whether an exemption applies, an agency is "typically required to submit an index and 'detailed public affidavits' that, together, 'identify[] the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption."[33]  These submissions—commonly referred to as a *Vaughn* index[34]—"must be detailed enough for the district court to make a *de*

---

1126, 1131 (N.D. Cal. 2008) (quoting *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)).

[29] 5 U.S.C. § 552(a)(4)(B).

[30] *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (citation omitted).

[31] *Transgender Law Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 780 (9th Cir. 2022).

[32] *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (internal quotation marks and citation omitted).

[33] *Ecological Rts. Found. v. EPA*, 607 F. Supp. 3d 979, 993 (N.D. Cal. 2022), *aff'd*, Case No. 22-15936, 2023 WL 4342100 (9th Cir. July 5, 2023) (alteration in original) (quoting *Yonemoto v. Dep't of Veterans Affs.*, 686 F.3d 681, 688 (9th Cir. 2012), *overruled on other grounds by Animal Legal Def. Fund*, 836 F.3d at 989-90).

[34] *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

*novo* assessment of the government's claim of exemption."[35]  A court shall "accord substantial weight to an agency's declarations regarding the application of a FOIA exemption."[36]

## DISCUSSION

### I.    Mr. Basey's Motion to Amend the Pleadings

At Docket 41, Mr. Basey moves "to treat the issues raised in the summary judgment motions as if they were raised in the pleadings" pursuant to Federal Rule of Civil Procedure 15(b)(2).[37]  Mr. Basey notes that, although the operative complaint in this case alleged only two FOIA claims—a timeliness claim and a claim that the FBI wrongfully invoked Exemptions 6 and 7(c)—"DOJ raised Exemptions in its Motion it had not invoked prior to the filing of the operative complaint" and "revealed evidence for the first time regarding its search and segregability efforts."[38]  Defendants filed a non-opposition to this motion, stating that they "do not oppose Plaintiff's request to amend his pleadings provided the amendment is limited . . . to the challenging of the DOJ's FOIA Exemptions at the

---

[35] *Lion Raisins v. U.S. Dep't of Agriculture*, 354 F.3d 1072, 1082 (9th Cir. 2004), *overruled on other grounds by Animal Legal Def. Fund*, 836 F.3d at 989-90 (internal quotation marks and citation omitted).

[36] *Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012) (citation omitted); 5 U.S.C. § 552(a)(4)(B).

[37] Docket 41 at 1.

[38] Docket 41 at 2.

summary judgment stage."[39]

Given the parties' agreement, Mr. Basey's motion at Docket 41 is granted. The Court will address Mr. Basey's arguments with respect to all the exemptions Defendants asserted in their summary judgment motion and referenced in the declaration of Michael Seidel and the *Vaughn* index filed by Defendants, along with the segregation issue.[40]

## II. The Parties' Cross-Motions for Summary Judgment

Defendants assert that "DOJ has discharged its individual obligations under FOIA by (1) conducting reasonable searches for responsive materials and (2) invoking proper legal authority when withholding documents or portions of documents that were otherwise responsive to Plaintiff's FOIA request."[41] In his cross-motion, Mr. Basey responds that DOJ did not conduct an adequate search for records responsive to his requests and improperly invoked several FOIA exemptions.[42] In addition, Mr. Basey claims that the EOUSA violated FOIA by failing to make a timely determination of his request and that DOJ failed to release portions of records that are reasonably segregable from those it fully withheld.[43]

_____

[39] Docket 44 at 1.

[40] *See* Docket 39.

[41] Docket 38 at 19.

[42] Docket 42 at 10–36.

[43] Docket 42 at 8–9, 36–37.

Case No. 3:24-cv-00005-SLG, *Basey v. U.S. Department of Justice, et al.*
Order on Pending Motions
Page 10 of 43

**A.    Summary Judgment to Defendants Is Appropriate with Respect to Mr. Basey's Claims Regarding the Adequacy of Defendants' Searches.**

Defendants maintain that they conducted reasonable searches for documents responsive to Mr. Basey's requests and thus fulfilled their obligation under FOIA.[44] With respect to the EOUSA, Defendants submit that the Seidel declaration and accompanying exhibits demonstrate that the EOUSA properly searched its records, located documents that originated with the FBI, and made an appropriate referral to the FBI, which ultimately resulted in disclosures to Mr. Basey.[45] With respect to the FBI, Defendants again refer to the Seidel declaration regarding its search procedures and contend that this declaration demonstrates that the FBI conducted a search "reasonably calculated to uncover all relevant documents," thereby discharging its duty pursuant to FOIA.[46] Mr. Basey responds that the Seidel declaration's statement on how the EOUSA conducted its search is conclusory and inadequate because it does not explain "what records were searched, by whom, and through what process."[47] And Mr. Basey insists that the FBI's search was inadequate because the Seidel declaration's explanation of the FBI's search lacks a "description of 'the search methods they used, the body of

---

[44] Docket 38 at 19–21.

[45] Docket 38 at 19–20 (citing Docket 39).

[46] Docket 38 at 20–21 (first citing Docket 39; and then quoting *Zemansky*, 767 F.2d at 571).

[47] Docket 42 at 11 (quoting *Lawyers' Comm. for Civil Rights of S.F. Bay Area*, 534 F. Supp. 2d at 1131) (internal quotation marks omitted).

records examined, or the total time spent on the search' once the relevant file was located" and a description of what efforts the FBI made to "tailor its search" to the specifics of his requests.[48]  Additionally, Mr. Basey contends that the FBI did not search a "reference index" or files associated with its Forensic Audio Video and Image Analysis Unit ("FAVIAU").[49]  Mr. Basey also maintains that DOJ's failure to locate any records documenting the efforts made by DOJ to determine the reality of the alleged minors in Mr. Basey's emails at least "creates an inference of bad faith in conducting its search."[50]  To that end, Mr. Basey seeks limited discovery "to determine what happened to the records."[51]

FOIA requires that, "[i]n responding . . . to a request for records, an agency shall make reasonable efforts to search for the records in electronic form or format."[52]  An agency conducts a "reasonable search for responsive records" when it "us[es] methods that can be reasonably expected to produce the information requested to the extent they exist."[53]

---

[48] Docket 42 at 12 (quoting *Rojas v. Fed. Aviation Admin.*, 989 F.3d 666, 677–78 (9th Cir. 2021)).

[49] Docket 42 at 13–14.

[50] Docket 42 at 15.

[51] Docket 42 at 15–17.

[52] 5 U.S.C. § 552(a)(3)(C).  "[T]he term 'search' means to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request." *Id.* § 552(a)(3)(D).

[53] *Lawyers' Comm. for Civil Rights of S.F. Bay Area*, 534 F. Supp. 2d at 1130.

### 1. The EOUSA conducted an adequate search.

On November 1, 2023, the EOUSA informed the FBI by letter that a search of its records conducted by a FOIA/PA processor named Ebony Griffith of the Alaska U.S. Attorney's Office file had identified 65 pages of records as having originated with the FBI, and forwarded Mr. Basey's request to the FBI so it could directly respond to him.[54] Letters sent by the EOUSA to Mr. Basey in December 2023 and July 2024 confirmed that the EOUSA had located documents originating with the FBI and had referred those documents to the FBI for its review and response to Mr. Basey.[55]

Defendants maintain that the EOUSA's referral of Mr. Basey's request to the FBI was "almost identical to the search conducted in *Sanders v. Obama*, 729 F. Supp. 2d 148, 156 (D.D.C. 2010) where [a court found] EOUSA's forwarding of a FOIA request to an individual US Attorney's Office was reasonable."[56]

Although Mr. Seidel's declaration lacks details that explain precisely how the EOUSA conducted its search of records at the U.S. Attorney's Office for the District of Alaska, the EOUSA's letters to Mr. Basey explain that it had conducted a search of those records and had located records originating with the FBI.[57] The FBI

---

[54] Docket 38-1.

[55] Docket 38-2; Docket 39-13.

[56] Docket 45 at 4–5.

[57] *See* Docket 45 at 5; Docket 38-1; Docket 39-13.

Case No. 3:24-cv-00005-SLG, *Basey v. U.S. Department of Justice, et al.*
Order on Pending Motions
Page 13 of 43

reviewed the referred records and determined that they were duplicative of records that it had already located in its own search.[58] This search, in the context of Mr. Basey's broad request for records to DOJ, was adequate. Upon receiving Mr. Basey's request, DOJ referred it to the two components it determined were most likely to have responsive records. The EOUSA then searched the U.S. Attorney Office for the District of Alaska's records, determined that it did not have any that originated internally, and provided those documents that it had found that originated with the FBI to the FBI, which conducted a thorough search. The Court finds that the EOUSA employed a "method[] that can be reasonably expected to produce the information requested to the extent" it exists.[59]

### 2. The FBI conducted an adequate search.

The agency's declaration shows that the FBI conducted an adequate search of its records. In the declaration, Michael Seidel, the Section Chief of the Record/Information Dissemination Section of the Information Management Division of the FBI, describes the FBI's search methods, including the Central Record System ("CRS") database searched, the search identifiers used, and the internal divisions to which Mr. Basey's request was forwarded.[60] Mr. Seidel avers that, using Mr. Basey's case file number, the FBI searched the automated indices

---

[58] Docket 39 at ¶ 19.

[59] *Lawyers' Comm. for Civil Rights of S.F. Bay Area*, 534 F. Supp. 2d at 1130.

[60] Docket 39 at ¶¶ 1, 20–32.

of its CRS, "the FBI system of records where responsive records would reasonably be expected to be found," which the FBI determined was "the most reasonable means for the FBI to locate records potentially responsive to Plaintiff's FOIPA request."[61]   Further, Mr. Seidel explains that, in addition to locating information from Mr. Basey's investigative file in the CRS, the FBI conducted searches of the agency's Internal Policy Office's Policy Library and the agency's intranet to determine whether there were additional records in those locations responsive to Mr. Basey's request for guidance, standard operating procedures, training materials, and related materials regarding how FBI determines the authenticity of alleged minors in cases brought pursuant to 18 U.S.C. § 2252.[62]   The FBI also conducted a targeted search of its Crimes Against Children and Human Trafficking Unit and the Anchorage Field Office, where it located a policy responsive to Mr. Basey's request.[63]

Mr. Basey's assertion that Mr. Seidel's declaration lacks an adequate description of the FBI's search methods and what efforts the agency undertook to tailor its search is contradicted by the details in the declaration.  Moreover, Mr. Seidel explains that a search of its CRS's automated indices "represented the most reasonable means for the FBI to locate records potentially responsive to Plaintiff's

---

[61] Docket 39 at ¶¶ 20–28.

[62] Docket 39 at ¶¶ 29–30.

[63] Docket 29 at ¶ 31.

FOIPA request."[64] And, although Mr. Basey suggested in his request that some responsive records might reside with the FBI's FAVIAU, Mr. Seidel's declaration explains that the CRS indices "provide access to a comprehensive, agency-wide set of indexed data on a broad array of investigative and administrative subjects."[65] And the CRS includes video files, as the FBI's search located three such files in this case.[66] In addition, when the FBI determined that other locations might contain additional responsive records, it searched these locations as well, undercutting an inference of bad faith.[67] "[T]here is no requirement that an agency search every record system, or that a search be perfect . . . ."[68] Rather, "the search must be conducted in good faith using methods that are likely to produce the information requested if it exists."[69] The FBI certainly met that requirement here.

Mr. Basey also maintains that the FBI's failure to identify documents responsive to his requests shows bad faith.[70] He reasons that DOJ has a policy

---

[64] Docket 39 at ¶ 27. Mr. Basey argues that the FBI should have searched the reference index in addition to the main index, Docket 42 at 13, but Mr. Seidel explains that reference index entries are "created for an individual . . . associated with an investigation, but who . . . is not the main subject or focus of the investigation." Docket 39 at ¶ 23(b).

[65] Docket 42 at 13; Docket 39 at ¶¶ 16–18, 27.

[66] *See* Docket 39 at ¶¶ 16–18.

[67] *See* Docket 39 at ¶¶ 29–32 (explaining searches of the FBI's policy library and targeted searches of a particular unit).

[68] *Lawyers' Comm. for Civil Rights of S.F. Bay Area*, 534 F. Supp. 2d at 1130 (citations omitted).

[69] *Id.*

[70] Docket 42 at 14–15.

in place to follow certain procedures to determine the reality of alleged minors in § 2252(a) prosecutions and that the FBI's failure to find such records creates an inference of bad faith.[71]  However, Mr. Basey's allegations of bad faith rest on innuendo.  "The agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exists, does not undermine the determination that the agency conducted an adequate search for the requested records."[72] The DOJ policy Mr. Basey cites may or may not have applied to his prosecution.  And, in any event, DOJ was not required to present expert evidence at Mr. Basey's criminal trial that the images portrayed real minors.[73]  Mr. Basey cites to a judge's discussion of the procedure an expert used to authenticate images as portraying a real person in a § 2252(a) prosecution in the District of Puerto Rico.[74]  But, as the Ninth Circuit has observed, "there seems to be general agreement among the circuits that pornographic images themselves are sufficient to prove the depiction of actual minors."[75]  Further, "[a]gency affidavits are

---

[71] Docket 42 at 14–15.

[72] *Lawyers' Comm. for Civil Rights of S.F. Bay Area*, 534 F. Supp. 2d at 1130 (citation omitted).

[73] *United States v. Salcido*, 506 F.3d 729, 733–34 (9th Cir. 2007) ("[E]xpert testimony is not required for the government to establish that the images depicted an actual minor.").

[74] Docket 42 at 15; *see United States v. Rodriguez-Pacheco*, 475 F.3d 434, 452–53 (1st Cir. 2007) (Torruella, J. dissenting).

[75] *Salcido*, 506 F.3d at 734.

accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."[76]

Based on the foregoing, the Court finds that Defendants conducted a reasonable search for records responsive to Mr. Basey's FOIA request. Mr. Basey's request for discovery regarding the adequacy of the search is also denied.[77]

### B. Summary Judgment that Defendants Properly Invoked FOIA Exemptions to Withhold Records Is Warranted.

Defendants assert that the FBI properly invoked exemptions to withhold or redact certain records responsive to Mr. Basey's request.[78] Mr. Basey responds that the FBI improperly invoked each of the exemptions it asserted.[79]

"FOIA was enacted to facilitate public access to Government documents."[80] "At the same time, FOIA contemplates that some information may legitimately be kept from the public."[81] FOIA contains nine statutory exemptions that an agency

---

[76] *Smart-Tek Servs., Inc. v. IRS*, 829 F. App'x 224, 225 (9th Cir. 2020) (internal quotation marks omitted) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

[77] *See Lane v. Dep't of the Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008) (recognizing that "discovery is not typically part of FOIA and Privacy Act cases, and whether to permit discovery is well within the sound discretion of the district court judge") (quoting *Broaddrick v. Exec. Office of the President*, 139 F. Supp. 2d 55, 63 (D.D.C. 2001).

[78] Docket 38 at 21–28.

[79] Docket 42 at 17–36.

[80] *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (internal quotation marks and citation omitted).

[81] *Id.*

may invoke to withhold production.[82]  "FOIA's strong presumption in favor of disclosure means that an agency that invokes one of the statutory exemptions to justify the withholding of any requested documents or portions of documents bears the burden of demonstrating that the exemption properly applies to the documents."[83]

### 1.    The FBI properly invoked Exemption 3.

The FBI invoked FOIA Exemption 3 to withhold investigative materials, "including interviews of a minor victim and explicit media involving" child sexual abuse, which Defendants assert are protected from disclosure by the Child Victims' & Child Witnesses' Rights Act, 18 U.S.C. § 3509(d).[84]  Mr. Basey responds that this exemption was improperly invoked because DOJ "offers no evidence that any such 'victims' or 'witnesses' . . . exist."[85]  He notes that the fact that he was not required to pay restitution in his criminal case provides some evidence that no victims of child sexual exploitation exist, and that DOJ is improperly asking this Court "to assume—without any probable cause finding—that an offense has been committed."[86]

---

[82] 5 U.S.C § 552(a)(8)(A), (b).

[83] *Lahr*, 569 F.3d at 973 (internal quotation marks and citation omitted).

[84] *See* Docket 39 at ¶¶ 39–40; Docket 39-14 at 14–21, 27–38 (FBI's *Vaughn* index).

[85] Docket 42 at 19–20.

[86] Docket 42 at 20–22.

Exemption 3 of FOIA excludes from FOIA's disclosure requirement information "specifically exempted from disclosure by statute . . . if that statute-- (A)(i) requires that matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld" from FOIA's disclosure requirements.[87] "There is a two-step inquiry in deciding Exemption 3 questions."[88] Courts "ask first whether the statute identified by the agency is a statute of exemption within the meaning of Exemption 3, and then whether the withheld records satisfy the criteria of the exemption statute."[89]

Here, the FBI invoked the Child Victims' & Child Witnesses' Rights Act, 18 U.S.C. § 3509(d), which prohibits the disclosure of documents that disclose the name or any other information concerning children involved in criminal proceedings. Clearly, the withheld records satisfy the Child Victims' & Child Witnesses' Rights Act's criteria. Mr. Basey was convicted of distributing and transporting child pornography in violation of 18 U.S.C. § 2252(a)(1) and (2).[90] The withheld records are investigative materials related to Mr. Basey's case, which Mr. Seidel's declaration indicates "provide[] in depth and graphic details of abuse and

---

[87] 5 U.S.C. § 552(b)(3).

[88] *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 776 (9th Cir. 2015).

[89] *Id.*

[90] *United States v. Basey*, Case No. 4:14-cr-00028-RRB, Docket 257 (D. Alaska 2018).

exploitation of minors, including interviews of a minor victim and explicit media involving" child sexual abuse.[91]  Undoubtedly, these records contain information concerning children involved in criminal proceedings.

Mr. Basey's protestation that the FBI has not proven that victims exist is meritless because a jury convicted him of child sexual exploitation offenses based on proof beyond a reasonable doubt.[92]  Further, Mr. Seidel's sworn statements that the investigative materials Mr. Basey seeks contain information related to children involved in criminal proceedings is sufficient to exempt this material from production.

### 2.    The FBI properly invoked Exemption 5.

Next, the FBI invoked Exemption 5 to withhold handwritten interview, investigatory, and analytical notes taken by FBI Special Agents.[93]  Defendants maintain that the FBI properly invoked this exemption because the handwritten notes "reflect FBI SAs' deliberations which were integral to reaching final agency decisions and the preparation of final products to be serialized to the case."[94]  Mr. Basey responds that the withheld records are neither predecisional nor

---

[91] Docket 39 at ¶ 40.

[92] *United States v. Basey*, Case No. 4:14-cr-00028-RRB, Docket 257 (D. Alaska 2018); *see also Salcido*, 506 F.3d at 733–34.

[93] Docket 39 at ¶¶ 44–49; Docket 39-14 at 14, 28–31.

[94] Docket 38 at 23.

Case No. 3:24-cv-00005-SLG, *Basey v. U.S. Department of Justice, et al.*
Order on Pending Motions
Page 21 of 43

deliberative.[95]  He asserts that the documents are not predecisional because Defendants cannot pinpoint a specific decision to which the documents relate and are not deliberative because Defendants did not show what deliberative process was involved and the role those documents played in that process.[96]  Further, Mr. Basey claims that, even if Exemption 5 applied, Defendants fail to articulate a "reasonably foreseeable harm that would occur as a result of disclosure."[97]

Exemption 5 of FOIA excludes from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency," unless they are "records created 25 years or more before the date on which the records were requested."[98]  "This allows agencies to withhold privileged information, including documents revealing an agency's deliberative process and confidential attorney-client communications."[99] "To qualify [under Exemption 5], a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation

---

[95] Docket 42 at 22–25.

[96] Docket 42 at 22–25 (first citing *Providence J. Co. v. U.S. Dep't of the Army*, 981 F.2d 552, 557 (1st Cir. 1992); and then citing *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 585–86 (D.C. Cir. 1987)).

[97] Docket 42 at 26–27 (citing 5 U.S.C. § 552(a)(8)(A)(i)).

[98] 5 U.S.C. § 552(b)(5).

[99] *Transgender Law Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 782 (9th Cir. 2022).

against the agency that holds it."[100]  This includes civil discovery privileges, such as the work-product privilege, which  "protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation," and the deliberative process privilege, which covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."[101]

The records withheld pursuant to Exemption 5 in this case are the SAs' "handwritten notes taken during interviews of victims (Bates pages 789, 796), handwritten notes taken during an evidence preparation session with an AUSA (Bates page 847), and preliminary handwritten notes of an FBI SA compiled during review of the evidence and created prior to finalizing the report of that review (Bates pages 823–827, 891–898)."[102]  These handwritten notes were later incorporated into an official FD-302,[103] or into a report "compiled after review of information and evidence."[104]  These notes are protected by the work product doctrine, which "protects from discovery documents and tangible things prepared

---

[100] *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

[101] *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 906 (9th Cir. 2004) (internal quotation marks and citation omitted); *Klamath Water Users Protective Ass'n*, 532 U.S. at 8 (internal quotation marks and citation omitted).

[102] Docket 39 at ¶ 45 (footnotes omitted); *see also* Docket 39-14 at 14, 28–31 (applying Exemption 5 for certain records associated with FD-302 forms).

[103] "A 302 report is an FBI agent's formal account of a witness interview filed on the FBI's Interview Report Form FD-302."  *U.S. v. Lloyd*, 807 F.3d 1128, 1158 n.11 (9th Cir. 2015) (quotation omitted).

[104] Docket 39 at ¶ 47.

by a party or his representative in anticipation of litigation."[105]  In *Leopold v. U.S. Department of Justice*, the District Court for the District of Columbia concluded that the FD-302s themselves are subject to work product protection as they are materials prepared by law enforcement agents acting in support of attorneys preparing a case for indictment.[106]  Given that the FD-302s themselves may be protected and exempt from disclosure to the general public under FOIA, the handwritten notes leading up to the creation of the FD-302s and other reports are likewise exempt.

Mr. Basey's counterarguments focus on the deliberative process privilege, which formed the basis of the FBI's exemption.  "To properly assert this privilege, an agency must show that a document is both (1) predecisional or antecedent to the adoption of agency policy and (2) deliberative, meaning it must actually be related to the process by which policies are formulated."[107]  "A document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision."[108]  "A document is deliberative if disclosure of materials would expose an agency's decision-making process in such a way as to

---

[105] *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d at 906 (internal quotation marks and citation omitted).

[106] *Leopold v. U.S. Dep't of Just.*, 487 F. Supp. 3d 1, 10–15 (D.D.C. 2020) (concluding FD-302s were properly withheld as work product pursuant to Exemption 5).

[107] *Transgender Law Ctr.*, 46 F.4th at 783 (internal quotation marks and citation omitted).

[108] *Id.* (internal quotation marks and citation omitted).

discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."[109]  The handwritten notes the FBI withheld are predecisional in the sense that they were prepared to assist federal agents and prosecutors in making investigatory and prosecutorial decisions.  And, although Mr. Basey insists that Defendants do not identify a decision which these documents preceded, clearly these notes at least informed the U.S. Attorney's Office's decision to indict and prosecute Mr. Basey.  Moreover, these records are deliberative because their disclosure could harm agency deliberations and prosecutions by chilling employees' willingness to create or share drafts with their unfiltered thoughts and impressions.  Accordingly, these  handwritten notes are exempt from disclosure because they are protected by the deliberative process privilege.

### 3.    The FBI properly invoked Exemptions 6 and 7(C)

The FBI invoked Exemptions 6 and 7(C) to withhold the names and other identifying information of FBI Special Agents, professional staff, and other government personnel,  as well as the names and other identifying information of third parties who provided information, were tangentially mentioned, were of investigative interest, or were victims.[110]  Defendants assert that the FBI properly applied these exemptions because "[a]ll of the information sought that was

---

[109] *Id.* (internal quotation marks and citation omitted).

[110] Docket 39-14 at 4–5, 14–21, 27–36, 38; Docket 39 at ¶¶ 57–67.

excluded from disclosure . . . was in connection with [Mr. Basey's] criminal case, and prepared for law enforcement purposes" and the purpose of FOIA would not be fostered by releasing identifying information regarding the individuals involved in the investigation.[111] Mr. Seidel, in his declaration, further explains that individual privacy interests—such as law enforcement personnel's interests in avoiding reprisals; third parties' interests in avoiding harassment, embarrassment, undue public attention, or professional and social repercussions; and victims' interests in avoiding further harm—outweigh the public's interest in disclosure of this information, which interest he asserts is minimal as the records in question do not reveal relevant information that would help the public understand the agency's activities.[112] Mr. Basey responds that the FBI withheld records in full pursuant to these exemptions and "[t]he removal of identifying information from records withheld under Exemptions 6 and 7(C) would allow for partial disclosure.[113] Mr. Basey points out that Defendants do not explain why redaction is not possible; rather, the agency withheld the records in full.[114] He thus contends that "[s]ince no privacy interest exists in information beyond the identifying information covered by [the exemptions] and the agency's segregability analysis was deficient, it should

---

[111] Docket 38 at 26–27.

[112] Docket 39 at ¶¶ 55–67.

[113] Docket 42 at 27–28.

[114] Docket 42 at 28.

conduct a line-by-line review of documents it withholds in full and disclose all reasonably segregable information."[115]  Further, he insists that the FBI improperly withheld the names of the eight law enforcement officers who appeared in open court at trial in the criminal case and are therefore publicly associated with this case.[116]  And he asserts that the public interest "in exposing government misconduct"—specifically, the alleged violation of his rights under *Brady v. Maryland*—outweighs the privacy interests raised, such that "the names of the AUSA and main SA responsible for Basey's prosecution should be released."[117]

FOIA's Exemption 6 excludes from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."[118]  Courts in the Ninth Circuit conduct a "'two-step test for balancing individual privacy rights against the public's right of access' under Exemption 6, which begins with a threshold evaluation of whether the personal privacy interest at stake 'is nontrivial.'"[119]  "[G]overnment records containing information that applies to particular individuals satisfy the threshold test of

---

[115] Docket 42 at 29.

[116] Docket 42 at 29–31 (citing *Matthews v. FBI*, 575 F. Supp. 3d. 166, 179 (D.D.C. 2021)).

[117] Docket 42 at 31–32 (citing *Brady v. Maryland*, 373 U.S. 83 (1963)).

[118] 5 U.S.C. § 552(b)(6).

[119] *Transgender Law Ctr.*, 46 F.4th at 783–84 (quoting *Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 637 (9th Cir. 2017)).

Exemption 6."[120]  Then, "if the agency succeeds in showing that the privacy interest at stake is nontrivial, the requester must show that the public interest sought to be advanced is a significant one and that the information [sought] is likely to advance that interest."[121]

Similarly, Exemption 7(C) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."[122]  As a threshold matter, documents withheld pursuant to Exemption 7(C) must have been compiled for law enforcement purposes.  Once that threshold is met, courts conduct the same balancing test that they conduct for Exemption 6.  Indeed, "it is appropriate to consider Exemptions 6 and 7(C) together."[123]  However, "the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes [under Exemption 7(C)] is somewhat broader than the standard applicable to personnel, medical, and similar files [under Exemption 6]."[124]

---

[120] *Id.* at 784 (alteration in original) (internal quotation marks and citation omitted).

[121] *Cameranesi*, 856 F.3d at 637 (alteration in original) (internal quotation marks and citation omitted).

[122] 5 U.S.C. § 552(b)(7)(C).

[123] *Transgender Law Ctr.*, 46 F.4th at 784 (citing *Yonemoto*, 686 F.3d at 693 n.7).

[124] *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989) (comparing Exemption 6's requirement that the invasion of privacy be "clearly unwarranted" to Exemption 7(C)'s requirement that disclosure "could reasonably be expected to constitute" an invasion of

All of the records the FBI withheld pursuant to Exemptions 6 and 7(C) were either part of Mr. Basey's criminal file or related to search warrants and therefore were compiled for law enforcement purposes.[125]  Further, Defendants have identified non-trivial privacy interests in the withheld documents.  The FBI withheld documents that include the names or identifying information of FBI Special Agents, FBI professional staff, other government personnel, and members of local law enforcement. These individuals have privacy interests in the documents, as the disclosure of their identifying information could expose them to harassment or revenge-seeking from criminal defendants and others.[126]  In the same vein, third parties who cooperated with the FBI who are mentioned in investigative documents and third parties who are of investigative interest all have significant privacy interests because the disclosure of their identifying information could result in significant embarrassment, harassment, undue public attention, or result in derogatory inferences being drawn against them in professional or social settings due to the nature of the investigation.[127]  Additionally, third-party victims have privacy interests against the disclosure of identifying information as exposure of

---

privacy).

[125] Docket 39-14 at 4–5, 14–21, 27–36, 38; Docket 39 at ¶ 52.

[126] Docket 39 at ¶¶ 57–59, 64–65; *Lahr,* 569 F.3d at 977 ("FBI agents have a legitimate interest in keeping private matters that could conceivably subject them to annoyance or harassment. . . . And, lower level officials, like the FBI agents involved here, generally have a stronger interest in personal privacy than do senior officials." (citations and internal quotations omitted)).

[127] Docket 39 at ¶¶ 60–63.

their identities could cause them further harm.[128]  And third-party commercial institutions that provided assistance to the FBI have privacy interests at stake because disclosure of their identities could result in retaliation or other negative attention.[129]  The purpose of FOIA "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct."[130]

Defendants therefore have established non-trivial privacy interests for each category of records the FBI withheld, shifting the burden to Mr. Basey to "show that the public interest sought to be advanced is a significant one and that the information [sought] is likely to advance that interest."[131]

In his opposition, Mr. Basey asserts that there is a public interest in exposing government misconduct that outweighs the privacy interests Defendants identify.[132]  In his view, "there is at least an inference that DOJ withheld information regarding the lack of reality of alleged minors depicted in the images used to convict" him and that the public has an interest in learning the names of the AUSA and FBI SA responsible.[133]  He reasons there is an inference of misconduct

---

[128] Docket 39 at ¶ 66.

[129] Docket 39 at ¶ 67.

[130] *Reps. Comm. for Freedom of Press*, 489 U.S. at 773.

[131] *Cameranesi*, 856 F.3d at 637 (alteration in original) (internal quotations and citation omitted).

[132] Docket 42 at 31–32.

[133] Docket 42 at 31.

Case No. 3:24-cv-00005-SLG, *Basey v. U.S. Department of Justice, et al.*
Order on Pending Motions
Page 30 of 43

because he maintains that DOJ policy requires § 2252 investigations to determine whether the minors depicted in images are real, and that DOJ failed to identify any records demonstrating that they had applied that policy in his case.[134] But "where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure."[135] Rather, courts accord a presumption of legitimacy to the United States' official conduct in the absence of clear evidence to the contrary.[136] Even assuming Mr. Basey's accusation that the prosecution inadequately investigated whether the victims were real minors is accurate, this would not constitute a *Brady* violation. For the Court does not agree with Mr. Basey that a failure by the government to adequately investigate the reality of images or its failure to perform an expert analysis of those images violates *Brady*.[137] Rather, *Brady* requires the production of exculpatory evidence in the government's possession; it does not require the government to create potentially exculpatory evidence for the defense.

---

[134] Docket 42 at 15, 31.

[135] *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004).

[136] *Id.*

[137] *See Brady*, 373 U.S. at 87 ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."); *see also United States v. Alahmedalabdaloklah*, 94 F.4th 782, 844 (9th Cir. 2024) ("Under *Brady*, the Government must produce to the defense exculpatory or impeaching evidence in the prosecutor's possession.").

Mr. Basey also asserts that several law enforcement officials testified publicly at his trial and thus no longer have a privacy interest. But Ninth Circuit precedent establishes that "notions of privacy in the FOIA exemption context encompass information already revealed to the public."[138] Rather, the "marginal additional usefulness" of providing such information "in exposing government misconduct must outweigh the privacy interests at stake."[139] For example, in *Bowen v. U.S. Food and Drug Administration*, the Circuit Court concluded that materials made public through testimony at a state criminal trial nonetheless could be exempted from FOIA disclosures.[140] There, an expert had testified at a criminal trial "describing the chemical process of tracing cyanide-tampered products to their source."[141] The convicted criminal defendant then brought repeated requests under FOIA for information from the Food and Drug Administration involving cyanide and other poison tampering of consumer products.[142] One of Bowen's arguments was that the expert's testimony at the criminal trial made some of the requested information public, and hence that it should not be exempt from disclosure.[143] But the Ninth Circuit held that the materials were properly exempted.

---

[138] *Lane*, 523 F.3d at 1137 (citations omitted).

[139] *Lahr*, 569 F.3d at 978 (internal quotation omitted).

[140] *Bowen v. U.S. Food & Drug Admin.*, 925 F.2d 1225, 1228 (9th Cir. 1991).

[141] *Id.*

[142] *Id.* at 1226.

[143] *Id.* at 1228.

The Court first observed that "prior agency disclosures do not necessarily result in an agency's waiver to subsequent claims of exemption."[144]  It then concluded that the testimony at the criminal trial did not provide  "detailed, technical analysis of the techniques and procedures used to conduct law enforcement investigations of product tamperings" and explained that disclosure of this information "would present a serious threat to future law enforcement product-tampering investigations."[145]

Here, the Court acknowledges that providing Mr. Basey with the identity of each law enforcement official and prosecutor associated with each particular investigative document could provide Mr. Basey with a more detailed view into which officers conducted which parts of the investigation and how they did so.  And yet Mr. Basey already has the names of the AUSA and main SA involved in his case.  Mr. Seidel testified that the release of further information could "present a serious threat" as "the publicity associated with the release of" their names "could trigger hostility" and "may seriously prejudice [an individual's] effectiveness in conducting other investigations."[146]  On balance, the Court finds that Mr. Basey has not met his burden of showing that the public interest in uncovering a possible *Brady* violation in his criminal trial outweighs the privacy interests of the

---

[144] *Id.* (citing *Abbotts v. Nuclear Regulatory Comm'n*, 766 F.2d 604, 607–08 (D.C. Cir. 1985)).

[145] *Id.* at 1228–29.

[146] Docket 39 at ¶ 58.

government employees and third parties involved in that criminal proceeding so as to require additional identifying information of these individuals to be produced.

Lastly, Mr. Basey's argument that the FBI could have redacted these records similarly fails, which the Court addresses below.

### 4. The FBI properly invoked Exemption 7(E).

Lastly, the FBI withheld records that reflect FBI file classification numbers, secure fax numbers, email addresses, telephone numbers, methods used to collect information for investigations, database identifiers and search results, reports and data resulting from the FBI's Computer Analysis Response Team analyses, monetary payments for victim travel expenses, and "non-public details concerning the application of techniques and procedures utilized in investigations involving crimes against children, human trafficking investigations, and concerning the FBI's Cyber Division's Innocent Images National Initiative Program" pursuant to FOIA Exemption 7(E).[147] Defendants assert that, in each case, "disclosure could reasonably be expected to risk circumvention of the law."[148] Mr. Basey responds that the FBI's declaration does not provide sufficient factual details to allow the Court to deduce the nature of the techniques in question and thus determine that they must be protected from disclosure under Exemption 7(E).[149]

---

[147] Docket 39 at ¶ 83; Docket 39-14 at 4, 9, 14, 18–22, 28–25, 37–38.

[148] Docket 38 at 28 (internal quotation marks omitted) (quoting *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 777 (9th Cir. 2015)).

[149] Docket 42 at 36–37.

He contends that Mr. Seidel's declaration speaks in vague and boilerplate terms about methods and techniques used to investigate "intelligence" and "terrorist" activity and points out that the FBI's methods for determining whether minors are real in § 2252 cases are already publicly known.[150]

Exemption 7(E) excludes from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."[151] "Exemption 7(E) only exempts investigative techniques not generally known to the public."[152] However, as noted above, "prior agency disclosures do not necessarily result in an agency's waiver to subsequent claims of exemption."[153] And although an agency must submit "detailed public affidavits" with "a particularized explanation of why each document falls within the claimed exemption,"[154] affidavits supporting

---

[150] Docket 42 at 33–35 (citing *United States v. Rodriguez-Pacheco*, 475 F.3d at 452–53 (Torruella, J. dissenting)).

[151] 5 U.S.C. § 552(b)(7)(E).

[152] *Hamdan*, 797 F.3d at 777 (internal quotation marks omitted) (quoting *Rosenfeld v. U.S. Dep't of Justice,* 57 F.3d 803, 815 (9th Cir. 1995)).

[153] *Bowen*, 925 F.2d at 1228.

[154] *Ecological Rts. Found.*, 607 F. Supp. 3d at 993 (internal quotation marks omitted) (quoting *Yonemoto*, 686 F.3d at 688).

an agency's application of Exemption 7(E) need not provide details that "would compromise the very techniques the government is trying to keep secret."[155]

The FBI properly invoked Exemption 7(E) with respect to information that could be used to divine the FBI's investigative or intelligence-gathering methods. For example, the FBI withheld "sensitive investigative file classifications on four pages within the FBI's Crimes Against Children and Human Trafficking Program Policy Guide (Bates pages 1142–42, 1164–65)."[156]  As Mr. Seidel explains in his declaration, these file classifications are not known to the public and contain numbers that identify the investigative interest or priority given to various matters.[157]  "Releasing these singular file classifications would provide criminals and foreign adversaries with a tracking mechanism by which they can place particular files/investigations within the context of larger FBI investigative efforts and better gauge the FBI resources available to combat certain crimes," thereby allowing criminals to circumvent laws by informing them where the FBI's resources are being allocated.[158]  Similarly, sensitive database identifiers and results would give insight into the tools and systems the FBI uses to conduct investigations,

---

[155] *Hamdan*, 797 F.3d at 778.

[156] Docket 39 at ¶ 71.

[157] Docket 39 at ¶ 71.

[158] Docket 39 at ¶¶ 72–73.

thereby exposing intelligence gaps and intelligence gathering weaknesses.[159] Additionally, "within one document (Bates 454-458), the FBI withheld information concerning monetary payment amounts requested by FBI personnel and paid by the FBI to reimburse a third-party victim for travel expenses" after they traveled for an investigative interview.[160] Mr. Seidel maintains that the disclosure of the reimbursement "would reveal the FBI's level of focus on certain types of law enforcement" and "essentially paint a picture as to where the FBI's strengths and weaknesses lie within the spectrum of illegal activities it is mandated to investigate."[161]

The FBI also properly withheld records whose release would risk the circumvention of laws in different ways. The FBI properly withheld fax numbers, internal email addresses, and phone numbers, as disclosure of these could provide information that could allow individuals to gain unauthorized access to government systems and "spoof" or scam others by appearing to communicate from FBI systems.[162] Further, "the FBI protected reports and/or data resulting from the FBI's [Computer Analysis Response Team's ("CART")] analysis of digital media

---

[159] Docket 39 at ¶¶ 77–79.

[160] Docket 39 at ¶ 82.

[161] Docket 39 at ¶ 82.

[162] Docket 39 at ¶¶ 74–75.

collected during the investigations memorialized in the records at issue."[163]   Mr. Seidel maintains that "[p]roviding detailed information about CART software, equipment, techniques, procedures, and/or types of reports generated by CART during their forensic testing processes would impede the FBI's effectiveness in investigating crimes" and "would also aid in circumvention of the law by providing criminals the information necessary for them to adjust behavior in order to avoid detection."[164]   Mr. Basey responds that the software used by CART, the Forensic Toolkit, is "the industry standard" and accessible to the public.[165]   In his view, "[s]ince the public can access the relevant CART software at issue, the DOJ declaration's concerns with circumvention of the software or evasion of its capabilities ring hollow."[166]   But Mr. Basey's exhibits undercut his argument.   As the record the FBI released to Mr. Basey and Mr. Basey's attached exhibit shows, the FBI did not redact references to the Forensic Toolkit; rather, it redacted other information, which Mr. Seidel avers must be protected to prevent criminals from circumventing the FBI's investigations.[167]

Lastly, the FBI "withheld non-public details concerning the application of

---

[163] Docket 39 at ¶ 81.

[164] Docket 39 at ¶ 81

[165] Docket 42 at 35 (citing Docket 42-3).

[166] Docket 42 at 35.

[167] *See* Docket 42-3 at 2.

Case No. 3:24-cv-00005-SLG, *Basey v. U.S. Department of Justice, et al.*
Order on Pending Motions
Page 38 of 43

techniques and procedures utilized in investigations involving crimes against children, human trafficking investigations, and concerning the FBI's Cyber Division's Innocent Images National Initiative Program."[168]  Mr. Seidel states that "[i]f these program guides were disclosed in their entirety, the withheld information within would provide individuals and entities with insight into the standards the FBI follows when conducting these types of investigations, and the suite of investigative tools it is likely bring to bear in particular circumstances."[169]  These statements, which the Court credits, demonstrate that the FBI properly withheld non-public records compiled for law enforcement purposes, the production of which could disclose investigative techniques, thereby "greatly increas[ing] the risk that potential lawbreakers would be able to evade detection and/or be emboldened to engage in criminal activities."[170]

### C. Defendants Sufficiently Demonstrate that They Have Released the Reasonably Segregable Portions of Responsive Records.

Mr. Basey further claims that Defendants have failed to demonstrate that releasable information could not be reasonably segregated from information that the FBI properly withheld.[171]  Citing a case from the U.S. District Court for the District of Columbia, Mr. Basey submits that Mr. Seidel's affidavit does not

---

[168] Docket 39 at ¶ 83.

[169] Docket 39 at ¶ 83.

[170] Docket 39 at ¶ 83.

[171] Docket 42 at 36–37.

Case No. 3:24-cv-00005-SLG, *Basey v. U.S. Department of Justice, et al.*
Order on Pending Motions
Page 39 of 43

undertake a "line-by-line" review of each document, but rather makes an insufficient, blanket assertion that releasable information could not be segregated.[172]  Defendants do not reply directly, but discuss in their motion that the FBI conducted a segregability analysis as FOIA requires.[173]  And, in his declaration, Mr. Seidel explains that, of the 1,170 response pages of records the FBI located as responsive to Mr. Basey's request, 490 were released in full, 267 were released in part, and 413 were withheld in full, including 110 pages of duplicates.[174]

FOIA instructs that a "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."[175]  District courts must make specific findings on segregability and may not grant summary judgment when an agency does "not provide [the plaintiff] or the district court with specific enough information to determine whether the [agency] had properly segregated" portions of the records it claims are exempt.[176]  However, a district court need not "take on the role of

---

[172] Docket 42 at 36 (citing *Ecological Rts. Found.*, 607 F. Supp. 3d at 66).

[173] Docket 38 at 28–30.

[174] Docket 39 at ¶ 86.

[175] 5 U.S.C. § 552(b).

[176] *Transgender Law Ctr.*, 46 F.4th at 785–86 (alterations in original) (internal quotation marks omitted) (quoting *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1149 (9th Cir. 2008)).

document clerk, reviewing each and every document an agency withholds."[177] It may instead "rely on an agency's declaration in making its segregability determination."[178] "Agency affidavits that are sufficiently detailed are presumed to be made in good faith and may be taken at face value."[179]

Here, Mr. Seidel declares that "for 306 pages all the information on [pages withheld in full] was either fully covered by one or more of the cited FOIA exemptions or determined that any non-exempt information on these pages was so intertwined with exempt material, no information could be reasonably segregated for release."[180] This, combined with Mr. Seidel's statements regarding the materials withheld pursuant to each exemption the FBI asserted, provides a sufficiently detailed explanation that the FBI released all reasonably segregable portions of the requested records.

### D. Mr. Basey's Timeliness Claim Fails.

Lastly, Mr. Basey claims that the EOUSA violated FOIA by failing to make a timely determination on his request.[181] And he insists that this timeliness claim may be adjudicated, and declaratory relief granted, irrespective of whether the

---

[177] *Hamdan*, 797 F.3d at 779.

[178] *Id.*

[179] *Id.*

[180] Docket 39 at ¶ 87.

[181] Docket 42 at 8–9.

Court finds that Defendants fulfilled their other duties under FOIA.[182]  Defendants respond that Mr. Basey's FOIA claims, including his claim related to timeliness, are moot because they have produced all nonexempt materials.[183]

FOIA requires agencies to respond to document requests within 20 business days of receipt.[184]  Mr. Basey submitted his FOIA requests to DOJ on January 10, 2023.[185]  On January 12, 2023, DOJ advised Mr. Basey that it had referred his request to the EOUSA and the FBI.[186]  The FBI responded on January 24, 2023.[187]  The EOUSA responded on January 18, 2023, and indicated it was extending the deadline for its response due to the complexity of Mr. Basey's request pursuant to 5 U.S.C. § 552(a)(6)(B)(i)–(iii).[188]  Mr. Basey has not contested the EOUSA's invocation of the statutory provision for extension.  Because DOJ, through its two components, responded within 20 days of Mr. Basey's request, his timeliness claim fails.

---

[182] Docket 42 at 8–9 (first citing *Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d. 1184, 1188 (N.D. Cal. 1998); then citing *Or. Nat. Desert Ass'n v. Gutierrez*, 409 F. Supp. 2d 1237, 1248 (D. Or. 2006); and then citing *Sierra Club v. EPA*, Case No. 18-CV-03472-EDL, 2018 WL 10419238, at *7–8 (N.D. Cal. Dec. 26, 2018)).

[183] Docket 45 at 3–4.

[184] 5 U.S.C. § 552(a)(6)(A)(i).

[185] Docket 39 at ¶ 6; Docket 39-2.

[186] Docket 39 at ¶ 7.

[187] Docket 39 at ¶ 8.

[188] Docket 1 at 18.

Case No. 3:24-cv-00005-SLG, *Basey v. U.S. Department of Justice, et al.*
Order on Pending Motions
Page 42 of 43
Case 3:24-cv-00005-SLG    Document 47    Filed 03/24/25    Page 42 of 43

**CONCLUSION**

For the foregoing reasons, the Court rules as follows:

1.      Plaintiff's Motion to Amend at Docket 41 is GRANTED.

2.      Defendants' Motion for Summary Judgment at Docket 38 is GRANTED.

3.      Plaintiff's Cross-Motion for Summary Judgment at Docket 42 is DENIED.

The Clerk of Court shall enter final judgment accordingly.

DATED this 24th day of March, 2025, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE